REMINGTON VS. BAILEY.

In an action for the conversion of property, the defendant cannot introduce proof
to show that the plaintiff acquired the property under a sale which was fraud-
ulent as to creditors, unless the defendant is himself a creditor of the plain-
tiff's vendor, or has succeeded to the rights of a creditor.

The plaintiff in such an action, having testified that certain timber in controversy
was his, and that he got it out under a written contract of a certain date
made by him with one F. for the building of a barn, which contract was
mislaid and could not be produced, it was competent for the defendant, who
had put the plaintiff's title in issue, to introduce in evidence a written con-
tract between the plaintiff's brother and F., made about the same date, for
getting out the same quantity and kind of lumber; as such proof—there being
no pretense that F. made two contracts, one with each—might properly be
considered by the jury in determining the degree of credit to be given to the
plaintiff's testimony.

Where improper evidence has first been admitted, though objected to, and the
jury have afterwards been directed by the court not to consider it, the admis-
sion furnishes no ground for a new trial, unless it appears that the verdict
was improperly influenced thereby.

But where this court is not satisfied that the verdict of the jury was based wholly
upon the other evidence and uninfluenced by the evidence thus improperly
admitted, it will reverse the judgment and award a new trial.

January Term,
1861.

REMINGTON
v.
BAILEY.

ERROR to the Circuit Court for *Dane* County.

Action to recover a lot of timber alleged to have been unlawfully taken and detained by the defendant. The plaintiff testified that he got out the timber under a written contract made by him with one Falkner for building a barn, and that the contract had been mislaid and he did not know where it was. The case is otherwise sufficiently stated in the opinion of the court.

*Carpenter & Sprague*, for plaintiff in error:

The evidence offered by the defendant on the examination of the plaintiff, was improperly admitted, no foundation having been laid for it either in the answer or in the evidence before offered. *Jones et al. vs. Lake*, 2 Wis., 210. 2. Though subsequently withdrawn by the court from the consideration of the jury, its effect remained on their minds. It is sufficient ground of reversal that injustice *may* have been done the plaintiff by its admission. *Haswell vs. Bussing*, 10 Johns., 128 ; *Penfield vs. Carpender*, 13 id., 350 ; *Irvine vs. Cook*, 15 id., 239; *Tuttle vs. Hunt*, 2 Cow., 436 ; *Erben vs. Lorillard*, 19 N. Y., 299. It is for the defendant to show that it was not injurious to the plaintiff. *Nickerson vs. Morin*, 3 Wis., 243. 3. The contract between Henry W. Remington and Falkner was improperly admitted, because irrelevant.

*D. C. Bush*, for defendant in error:

All the evidence which the court permitted the jury to consider was strictly within the rule for cross-examination. 1 Greenl., §§ 446–7; 4 Wharton, 339. 2. The verdict depended upon the credibility of the plaintiff as a witness, and the jury had a right to discredit him. 8 Pick., 126 ; 18 id., 15 ; 4 Wharton, 150.

*By the Court*, DIXON, C. J. This was a suit in the nature of an action of trespass, brought by the plaintiff in error against the defendant in error, to recover damages for the taking and conversion of a quantity of square timber and braces, which had been prepared as the frame of a barn, and some planks and unwrought timber. The complaint was in the usual form of complaints in such actions. The answer was a general denial of each and every allegation con-

January 8.

tained in the complaint.    Upon the trial on the circuit, be-
fore the court and a jury, the plaintiff appeared and testified
as a witness in his own behalf; and it was upon his testi-
mony principally that the action was sought to be sustained.
After giving evidence tending to show that the property in
dispute was his, and that the defendant unlawfully took and
converted it to his own use, he was, upon cross-examination,
interrogated at some length as to his dealings and business
relations with his brother, Henry W. Remington.   One ob-
ject of these interrogatories appears to have been, to estab-
lish that Henry W. Remington was the real party in interest,
or owner of the timber and planks, by showing that the con-
tract under which the same were procured, was made by
him with one Falkner, for whom the frame and materials
were originally designed, but who had subsequently, and be-
fore the alleged conversion, forfeited and abandoned his
agreement.  The questions furthermore evince a desire or in-
tention to impeach the alleged title of the plaintiff, by show-
ing that the timber was cut upon land purchased by him of
Henry W., and that such purchase was fraudulent and
void as to the creditors of the latter.   The examination in
chief laid no foundation for a cross-examination of this kind,
and the questions put were severally objected to by the
plaintiff's counsel, but the objections were overruled and the
witness required to answer.   To these decisions of the court
the plaintiff's counsel excepted.   After considerable pro-
gress had been made and several facts elicited, the judge, be-
coming convinced that the examination was improper, put
an end to it, and directed the jury not to consider that por-
tion of the evidence which had thus been admitted.

On his direct examination the witness testified that the
timber and planks in question were procured by him in
fulfilment of a contract which he had made with Falkner for
the building of a barn.  Afterwards, during the trial, the
execution of a contract in writing between Henry W. and
Falkner was proved, and the contract offered and received
in evidence.   To this the plaintiff's counsel took exception.
On the part of the defendant little or no evidence was offered,
except as to the quantity and value of the timber taken.

The defendant was examined as a witness, and acknow-
ledged taking the timber, but said he purchased it at a
sheriff's sale.   No evidence was given concerning this sher-
iff's sale.   It does not appear what kind of a sale it was,
or for or against whom it was made.   The jury found a
general verdict for the defendant.

The record presents two questions for our consideration;
one as to the effect of first admitting and then excluding the
evidence given on the cross-examination of the plaintiff,
and the other as to the admission of the contract between
Henry W. Remington and Falkner.

Upon the first it is very clear that the court was wrong
when it admitted, and right when it excluded the evidence.
The pleadings laid no foundation for the introduction of any
such evidence.   For conceding that the transfer of property
from Henry W. to the plaintiff was fraudulent and void as
to the creditors of the former, yet the defendant was in no
position to take advantage of the fraud.   His answer did not
aver that he was a creditor, or the representative of a credit-
or of Henry W., claiming title to the property under him;
and one or the other he must have been in order to attack
the sale.   Hence no evidence of fraud was admissible.   But
the question arises whether the error of admitting it was
cured by the subsequent direction of the court to the jury
not to consider it.   This question was considered by this
court in the case of *The State Bank vs. Dutton*, decided at
the last term [11 Wis., 371].   As will be seen by a reference
to that case, the most favorable rule to the party in whose
behalf such improper evidence has once been received and
then excluded, which has been adopted by the courts, is that
the admission furnishes no ground for a new trial, unless it
appears that the evidence improperly influenced the verdict.
Here the plaintiff testified positively to his ownership of the
property.   In opposition to him there was no evidence, save
that of the fraud and some circumstances which it is claimed
went to impeach his character for veracity.   On the part of
the defendant it is insisted, that it was upon the latter evi-
dence that the jury found the verdict.   It is said that they
did not believe him; that his testimony was of so little weight

that they could not find from it that he was the owner of the property. It is unnecessary for us to say what disposition we should make of the case were we satisfied from the record that such was the opinion and belief of the jury. But of that we cannot be satisfied, where the improper evidence was quite as well calculated to support the conclusion at which they arrived, as that which was proper, and where, as here, the impeaching evidence was not of the most positive and convincing character. We cannot believe, under the circumstances of this case, that the jury, after the instruction to disregard it, remained entirely uninfluenced by the evidence admitted, and for that reason the judgment must be reversed, and a new trial awarded.

We see no error in the admission of the contract between Henry W. Remington and Falkner. The most that is objected to it is, that it was irrelevant. The plaintiff was upon the stand as a witness, and as such, liable to be discredited like any other. He testified to a contract with Falkner made about the time and almost identical with that produced with Henry W.; and there being no pretense that Falkner made two contracts, one with each, it was a fact which we think the jury might properly consider with a view to determining the degree of credit to be given to the plaintiff's statements.

Judgment reversed, and a new trial awarded.