# CHEESEMAN ET AL. v. FENTON, AS SHERIFF, ET AL.

REPLEVIN — PLAINTIFF'S TITLE — EVIDENCE — JUSTIFICATION BY DE-
FENDANT UNDER WRIT OF ATTACHMENT—VALID WRIT MUST BE
SHOWN WHEN PROPERTY TAKEN FROM STRANGER — EXECUTION
FROM JUSTICE COURT—ISSUANCE OF WRIT OF ATTACHMENT BY
JUSTICE OF THE PEACE — JURISDICTIONAL REQUIREMENT — JUSTICE
COURTS—COMMENCEMENT OF ACTION—NECESSITY FOR SUMMONS—
STATUTES.

1. Plaintiff in replevin testified that he became the owner of the
property by purchase at a sale upon foreclosure of a chattel
mortgage executed between other parties; the mortgage he
offered in evidence was excluded as not describing the
property in controversy; defendant introduced a mortgage
between such parties apparently describing other property.
It appeared that the foreclosure sale, under which plaintiff
claimed, had not taken place either in view of the property,
or at the court house, as required by statute. *Held,* that in
the absence of proof that the sale occurred under a mort-

gage authorizing it, and covering the property in suit, and it appearing that the sale had not occurred in the manner required by law, the plaintiff failed to establish title in himself, except, such title as may be presumed from possession, if he was shown to have been in possession.

2. Possession of personal property is *prima facie* lawful, and is in itself *prima facie* evidence of title.

3. As against a mere trespasser, one, from whose possession personal property has been taken, may maintain replevin without other proof of title.

4. An execution issued by a justice of the peace furnishes no justification to an officer in replevin, in the absence of proof that the property in controversy was taken under such execution.

5. Upon a default judgment in justice court against an attachment defendant served only by publication, an execution cannot be rightfully issued, until the plaintiff, or some person in his behalf, shall execute a bond, with approved surety, conditioned that if the defendant shall, within one year from the judgment, appear and disprove the debt or damages, or any part thereof, the plaintiff will refund the whole, or such part thereof as may be found justly due him in a review of the case. (Rev. Stat. 1899, Sec. 4484.)

6. Where defendants in replevin claimed under a writ of attachment issued by a justice of the peace, but failed to connect themselves with the possession of the officer under the writ, the proof being insufficient to show that the defendant in possession held under the writ, it was error to award judgment in favor of defendants for the value of the property, on the theory that it was less than the value of the writ, though the plaintiff, to whom the property had been delivered under the replevin writ, may have failed to prove title or right of possession in himself. The only judgment in such case to which defendants would have been entitled, if any, would be a judgment for costs.

7. Where an officer seizes personal property under an attachment writ which is in the possession of a stranger to the attachment suit under claim of ownership, it is incumbent on the officer, when sued in replevin by such person for a recovery of the property, to show not only a writ valid on its face, but the regularity of the attachment proceedings.

8. As against a plaintiff in replevin claiming ownership by virtue of a foreclosure sale under a chattel mortgage, from whose possession the property was taken under an attach-

ment writ against a third party, the defendant officer, and the other defendants, claiming only under the writ, cannot question the legality of the foreclosure sale, without showing a valid writ of attachment.

9. A civil action before a justice of the peace is required to be commenced by summons, and a writ of attachment is only authorized to be issued by the justice at or after the commencement of a civil action, and when issued at the commencement of the action the writ is required to contain the substance of a summons. *Held,* (1) That the requirement that a writ of attachment shall contain the substance of a summons when issued at the commencement of the action is jurisdictional; and when a summons has not been already issued in the case, the justice has no authority to issue a writ of attachment, unless the writ itself shall contain the substance of a summons, whether the defendant can or cannot be personally summoned. (2) The statute authorizing service by publication when the defendant cannot be summoned, and his property or effects shall be attached, and he does not appear (Rev. Stat. 1899, Sec. 4481), is not to be construed as rendering unnecessary the issuance of summons either separately or as part of the writ of attachment, since the suit is not commenced by the publication, but by summons.

[Decided May 6, 1905.]                    (80 Pac., 823.)

ERROR to the District Court, Big Horn County, HON. JOSEPH L. STOTTS, Judge.

Replevin. The facts are stated in the opinion.

*E. E. Enterline* and *W. L. Simpson,* for plaintiffs in error.

Civil actions before justices of the peace must be commenced by summons or by appearance and agreement of the parties without summons. (R. S. 1899, Sec. 4331.) In the absence of a summons or the submission by pleading, there is no action and there can be no judgment. (Lenosio v. Bartilino, 7 S. Dak., 93; Lester v. Crairy, 1 Denio, 81; Tenny v. Filer, 8 Wend., 569; Fanning v. Trowbridge, 5 Hill, 428.) Where a writ of attachment is issued at the commencement of the action before a justice, it must contain the substance of a summons. (R. S. 1899, Sec. 4452.)

No summons having been issued or action commenced, and the writ of attachment not containing the substance of a summons, all proceedings in the attachment suit were void. (White v. Johnson, 27 Ore., 282; Sherman v. Huot, 20 Mont., 555; Spreen v. Delsignore, 94 Fed., 71.)

The justice failed to note on his appearance docket the officer to whom the writ of attachment was delivered as required by Section 4330, and there is no evidence showing that the writ was delivered to any officer, nor that any return ever was made thereon by an officer. It is not sufficient for an officer to state in his return that he attached certain property, describing it; he must show what acts he did in making a complete and valid levy, and he must have taken possession of the property levied upon; and the return must show that the property was levied upon as the property of the defendant in the writ; otherwise the court has no jurisdiction to order a sale. (Anderson v. Plow Co., 101 Ia., 747; R. S. 1899, Secs. 4471, 4456; Tuells v. Torres, 113 Ga., 691; Repine v. McPherson, 2 Kan., 340; Clay v. Nielsen, 5 Rand, 596; Drake on Att., Sec. 205; Ireland v. Adair (N. Dak.), 94 N. W., 766; Haynes v. Small, 22 Me., 14.) Proceedings by attachment are special and the statutory provisions must be strictly followed or no rights will be acquired. (4 Cyc., 583-589; Rudolf v. Saunders (Cal.), 43 Pac., 619; Courtney v. Banks, 154 N. Y., 688; Ireland v. Adair, *supra.*) The failure of the justice's docket to show that the plaintiff's attorney appeared at four o'clock, without stating whether it was in the forenoon or afternoon, is fatal to the jurisdiction. (R. S., Secs. 4330, 4340, 4386; Mudge v. Yaples, 58 Mich., 307; Post v. Harper, 61 id., 434.)

Presumption in favor of the regularity in the proceedings of courts does not apply to courts of inferior or limited jurisdiction, but as to such courts the jurisdictional facts must fully appear from the record. (Bandement v. Trisler, 4 O. L. D., 447; State v. Barry, 12 Ia., 60; Goodrich v. Brown, 30 Ia., 291; McCurdy v. Bowman, 43 O. St., 78;

Repine v. McPherson, *supra;* Hargis v. Morse, 7 Kan., 415; King v. Bates, 80 Mich., 367; Jones v. Hunt, 90 Wis., 199; Miller v. Plue (Neb.), 64 N. W., 232; Leonosis v. Bartilino, 7 S. Dak., 93.) The statutory bond was not given authorizing the issuance of execution by the justice where the judgment had been rendered by default, and, therefore, no rights of property could be proven under that writ. (R. S. 1899, Sec. 4484; 8 Ency. Law (1st Ed.), 328; Bush v. Visant, 40 Ark., 124.) The defendants cannot justify, either under the writ of attachment or the execution. Where an officer defends under a writ, it is incumbent upon him to introduce or prove the writ to show his right of possession and the value thereof. (Cobbey on Replevin, Sec. 1207; Williams v. Eikenbury, 22 Neb., 211.) And he must prove that the attachment was regularly issued. An officer claiming under a levy of execution can recover only the amount of his lien on proof of valid judgment and execution, and he must show that the proceedings were regular preceding the execution. (Wyatt v. Treeman, 4 Cal., 14; Miller v. Plue, 45 Neb., 701; Cobbey on Replevin, Secs. 806, 1013; Adams v. Hubbard, 30 Mich., 104.) The judgment of a justice rendered without jurisdiction is not even *prima facie* evidence of the debt. (Pelton v. Planter, 42 Am. Dec., 197.) The measure of damages where defendant justifies under a writ is the loss to the plaintiff in the writ if it does not exceed the value of the property. (Cobbey on Replevin, Sec. 958; Bank v. McDonald (Neb.), 89 N. W., 770.) A judgment of a justice of the peace rendered without jurisdiction is a nullity and subject to collateral attack. (Black on Judgments, Secs. 218, 220, 278, 282; 12 Ency. Law (1st Ed.), 148; Murphy v. Lyons, 19 Neb., 689.)

Even if it should be held that the plaintiff failed to establish title in himself, he showed a right of possession. But if it be conceded that he failed to show either title to the property or right of possession, the plaintiffs also failed in that regard, so that at most the judgment against plaintiff should not have been more than a judgment for costs.

*E. E. Lonabaugh, Coker Rathbone* and *DeWitt C. Wenzell,* for defendants in error.

The plaintiff failed to establish a shadow of title to the property in controversy and must, therefore, inevitably fail. This is a collateral attack upon the jurisdiction of the justice of the peace respecting the proceedings in the attachment suit under which the defendants claim a right to the property, and any contention of counsel for plaintiff in error not relating to the question of the jurisdiction of the justice is not worthy of consideration.   The only two questions that deserve attention are, Did the justice of the peace acquire jurisdiction over the property attached, and (2), If he acquired jurisdiction, did he render a valid judgment? The court is familiar with the fact that the universal custom in justice courts in attachment cases is to issue a summons and writ of attachment combined, and undoubtedly one of such writs was used by the justice in the proceeding under which defendants claim.   Unfortunately the writ of attachment was lost and its absence from the files forms the sole basis of appellants' contention.   Noting the practice usually followed, we are satisfied that the writ contained the substance of a summons; but if not, it is wholly immaterial whether a summons issued or not.   Where the defendant is a non-resident, and that fact is known to the justice at the time the attachment writ is issued, it is not necessary to issue a summons at all.   The court may on application of the plaintiff proceed to obtain constructive service without first going through the useless formality of issuing a summons. (Bannister v. Carroll, 22 Pac., 1012; Dunlap v. McFarlan, 25 Kan., 488; Cohn v. Trowbridge, 6 Kan., 385; Wescott v. Archer, 12 Neb., 345.)   The evidence was sufficient to show that the writ of attachment was returned and filed, both the justice and the attorney for the plaintiff testifying thereto; and it also appears that the property was levied upon by the deputy sheriff and was in his possession when the present action was commenced.   Every officer is supposed to do his duty, and it cannot be presumed from the

loss of the attachment writ that no levy was made or returned, nor that it was fatally defective, so as to make the judgment void.

While there may be some irregularities in the docket of the justice of the peace, there is nothing fatal to the validity of the judgment. If the docket shows that jurisdiction was acquired and a valid judgment rendered, the plaintiff herein cannot complain of irregularities in the proceedings which may appear upon the docket. (Black on Judgments, p. 298; Lancaster v. Wilson, 27 Gratt., 624; Hendrick v. Whitmore, 105 Mass., 23; Paul v. Smith, 82 Ky., 451; Harris v. Lester, 80 Ill., 307; Porter v. Gile, 47 Vt., 620; Archer v. Guill, 67 Ga., 195; 62 Am. Dec., 330; 77 Va., 704.) This rule against collateral attack or impeachment applies to every judgment, order, decree or other proceeding, of whatever species that is not absolutely void, whether it be regular or irregular, correct or erroneous, valid or voidable. It is applicable to a judgment *in rem* when the court has jurisdiction of the *res*. (Harrison v. Pender, 57 Am. Dec., 573.) The burden of proving want of jurisdiction was on the plaintiff, for when the writ of attachment was issued and the property levied upon, the justice acquired jurisdiction of the *res* and by subsequently obtaining service by publication the jurisdiction of the justice was perfected to the extent of rendering a judgment in *rem* for sale of the attached property. (Vaule v. Miller (Minn.), 67 N. W., 540; Pennoyer v. Neff, 95 U. S., 727.)

It would seem from the language of the constitution that courts of justices of the peace are to be regarded as courts of general jurisdiction. They are constitutional courts, not statutory. (Const., Art. 5, Sec. 22; 1 Black on Judgments, Sec. 286; Williams v. Ball, 51 Tex., 603.)

The plaintiff insists on a number of errors and defects in the proceedings in justice court, more clerical than jurisdictional, which might be sufficient to reverse the judgment on direct attack, but they cannot be considered in this proceeding. (Paper Co. v. Shyer, 58 L. R. A., 173; People v.

Barry, 18 id., 339; Cycle Co. v. Thomas, 38 Pac., 307.; Brash v. Smith, 75 Pac., 55; Root v. Davis, 23 L. R. A., 445; Black on Judgments, Secs. 246-250.)   In the case at bar we insist that the record shows jurisdiction of the property taken in connection with the testimony that the cattle in question were attached by the officer having the writ of attachment in his hands for service; that service by publication was legally made, and a valid judgment *in rem* rendered.

POTTER, CHIEF JUSTICE.

This is an action of replevin brought in the District Court, Big Horn County, for the possession of four cows described in the petition.   The suit was brought by Harris E. Cheeseman against John J. Fenton, sheriff of Big Horn County; William Arnold, a deputy sheriff, and Joseph Cline.   The petition alleges that the plaintiff is the owner and entitled to the immediate possession of the property, and that the same is wrongfully, illegally and fraudulently detained by the defendant Arnold.   The answer is a general denial.   Upon the trial of the action before the court without a jury, the finding was for the defendants, and that they had the right of property and possession at the commencement of the action, and judgment was rendered in their favor and against the plaintiff and his surety for $120, the value of the property, and costs.   The plaintiff and his surety bring the cause here on error, assigning as error the rendition of the judgment and the overruling of the motion for new trial.   The writ of replevin is not in the record, nor the undertaking, but the judgment indicates that the property was taken upon the writ and delivered to the plaintiff.

The plaintiff testified that he was the owner of the property in controversy at the time of the commencement of the suit, and that he bought the same from the First National Bank of Meeteetse, Wyoming, at a sale upon foreclosure of a chattel mortgage; and enough appears to show that the chattel mortgage referred to was one executed to said bank

by Musa B. Stephenson and Robert B. Stephenson. Upon his offer of the chattel mortgage under which the sale was had, it was excluded on the ground that it did not describe the property claimed. Afterwards the defense introduced in evidence, without objection, a chattel mortgage executed to said bank by said Musa B. and Robert B. Stephenson, apparently describing and conveying other cattle than those in controversy. But it was not shown whether said mort-gage was the one under which the sale occurred, or the one offered by the plaintiff, nor whether it was the only chattel mortgage between the same parties.

An offer by the plaintiff on rebuttal to show that the bank had been in possession of the cattle under a bill of sale from the Stephensons was excluded. None of the fore-closure proceedings were shown except the time and place of sale; and it appeared that the sale had not taken place in view of the property, nor in lieu thereof, at the court house, as provided by statute. (R. S. 1899, Sec. 2825.) In the absence of proof that the sale occurred under a mort-gage authorizing it, and covering the property in suit, and it appearing that the sale had not occurred in the manner required by law, the plaintiff failed to establish title in him-self, except, perhaps, such title as may be presumed from possession. But it is contended that, as the property was taken from him when he was in possession, claiming owner-ship, he had a right to such possession as against defend-ants, who, it is further contended, failed to show any right of property or possession.

The evidence as to plaintiff's possession is not very satis-factory. He testified that when he bought the cows they were upon his ranch, and as his possession of them at that time is not disputed, it was doubtless assumed, and we may assume that he was then, and immediately after his alleged purchase, in possession. There is no direct evidence that such possession continued until the property was taken upon the attachment writ under which defendants claimed, and that fact is not proven unless the rule be applied that where

a certain state of affairs of a continuing nature is shown to exist at one time, its continuance will be presumed until the contrary is shown. If they were taken from his possession by either of the defendants without any right on their part to the property, so that they would be mere trespassers, he would, of course, be entitled to recover the possession as against them, since possession is *prima facie* lawful, and is in itself *prima facie* evidence of title. (Van Baalen v. Dean, 27 Mich., 104; Cobbey on Replevin, Sec. 135; 24 Ency. Law (2d Ed.), 485, 502; Lewis v. Birdsey, 19 Oreg., 164 (26 Pac., 623.) But the evidence as to the possession of the plaintiff is so unsatisfactory that, had the judgment been for the defendants for costs merely, it might probably have been sustained. The defendants having, however, been awarded a judgment for the full value of the property, based upon a finding of right of property and right of possession in them, it is necessary to consider whether that finding is warranted by the evidence.

The evidence upon that subject consisted solely of certain proceedings in attachment before C. W. McNair, a justice of the peace, wherein one Joe Cline was plaintiff, and Musa B. and Robert B. Stephenson were defendants, the plaintiff seeking to recover a judgment for $152.90. The sufficiency of the showing as to those proceedings to sustain the judgment rendered by the justice, and to constitute a valid attachment of the property, or to establish any right in the defendants, is challenged by the plaintiffs in error.

It appears that on July 13, 1903, Cline, the plaintiff in that suit, filed a petition, an affidavit for attachment, and an undertaking in attachment, and that on July 14, 1903, the justice issued a writ of attachment making it returnable July 17, 1903, and that it was returned and filed July 15, 1903. The writ of attachment appeared to have been lost, and there was no proof of its contents, nor whether an inventory of any property attached was made and returned with the writ. The justice's docket does not state to what officer the writ was delivered, as required by Section 4430,

Revised Statutes of 1899, and there was no proof upon that subject. The writ is required to be directed to the sheriff or any constable of the county. (R. S. 1899, Sec. 4454.) Neither is there any evidence to show what officer executed the writ. It does appear from the docket of the justice that on September 4, 1903, nearly a month after judgment was rendered, and shortly prior to the commencement of this action, an execution was delivered to the defendant Arnold, a deputy sheriff, but the evidence disclosed that the execution had not been returned, and there is nothing to show whether it was ever levied, or what, if anything, was done with it or under it by the officer. Moreover, it appears that the only service, if any, upon the defendants was by publication, that they did not appear, and that their default was entered. Under such circumstances no execution can be rightfully issued until the plaintiff, or some person in his behalf, shall execute a bond, with approved surety, conditioned that if the defendant shall, within one year from the judgment, appear and disprove the debt or damages, or any part thereof, the plaintiff will refund the whole, or such part thereof as may be found justly due him in a review of the case. (R. S., Sec. 4484.) It does not appear that such a bond was executed.

However, there is an entire absence of proof that the property in question was ever taken under the execution. Hence, it furnishes no justification to Arnold or either of the defendants.

Neither of the defendants testified in the case, but a witness on their behalf, who had been attorney for the plaintiff in the attachment suit, testified without objection that the officer, without naming him, had levied the writ of attachment upon the cows in dispute, in addition, it seems, to other property, and that he took possession thereof July 16, 1903, and kept them until they were taken from him by replevin: but the witness did not explain whether he referred to the replevin writ in this action or some other. The witness testified on cross-examination that his knowledge of the fact

that the cows in dispute had been levied upon had been derived from the officer's return to the writ, which he had made out for the officer, but he leaves the identity of the officer to mere inference. From a careful reading of the testimony, we think it impossible to say what officer had the attachment writ and executed it. The record does not even inform us whether the property was found in Arnold's possession or not, though the petition alleges that he unlawfully detained it from the plaintiff. He does not appear to be the only deputy sheriff in the county, and probably was not. The sheriff, who was made a party defendant to this suit, is not alleged to have been in possession of the property at any time, and the same is true as to the other defendant, Cline, and the evidence does not disclose that either of them ever had possession. Although Cline was supposedly the plaintiff in the attachment suit, that fact would not entitle him to the possession of the attached property under the writ. That right would belong to the officer who executed the writ, and who would hold the property subject to such disposition as the law provides.

Having failed, therefore, to connect themselves with the possession of the officer under the writ of attachment, the defendants were not entitled to a judgment for the value of the property, on the theory that it was less than the value of the writ, for the defendant in possession may not have held the property under that writ. Assuming that plaintiff had not shown any right to possession, the defendant from whom the property was taken under the replevin writ might possibly, if there were no other defects in the case for the defense, have been entitled to a judgment for costs; but not for the value of the property, unless it had been shown that he had taken it and held it by virtue of the writ of attachment.

Further, as above stated, it appeared that the officer, whoever he may have been, took possession of the property under the writ July 16, 1903. By the docket entry of the justice, the writ had been returned and filed the day pre-

vious—July 15, 1903. Did the officer attempt to levy upon the property without taking possession? Or did he make the alleged levy after he had returned the writ? The testimony does not give a direct or clear answer to these inquiries. The writ not being returnable until the 17th, the officer might have executed it by a levy on the 16th, unless he had parted with possession and control of the writ by its return on the 15th, and perhaps he might have again taken it on the 16th and made the levy. But if he did so, there is no evidence that he made a subsequent return.

On the ground, however, that the evidence does not connect the possession of either of the defendants, if either had possession, with the writ of attachment, we are of opinion that the court was not justified in awarding the defendants a judgment for the value of the property, and that the judgment for that reason must be reversed; there having been no other right of possession shown on the part of the defendants.

As the action must be remanded for new trial, there are some other important questions which we think may properly be considered to the end that another trial may be had upon what seems to us to be the principles applicable to the case.

The jurisdiction of the justice to issue the writ of attachment is questioned. That question may become pertinent in the event that plaintiff be shown to have been in possession claiming ownership, when the attachment was levied. The rule is that where an officer seizes property under an attachment writ which is in the possession of a stranger to the attachment suit under claim of ownership, it is incumbent on the officer, when sued in replevin by such person for a recovery of the property, to show not only a writ valid on its face, but the regularity of the attachment proceedings. (Jones v. McQueen, 45 Pac., 202 (Utah); Drake on Attachment, Sec. 185a; Thornburgh v. Hand, 7 Cal., 554; Horn v. Corrarubias, 51 Cal., 524; Mathews v. Densmore, 43 Mich., 461; Van Etten v.

Hurst, 6 Hill, 311; Brinchman v. Ross (Cal.), 8 Pac., 316; Williams v. Eichenberry, 25 Neb., 721; 13 Am. St., 517; Cobbey on Replevin, Sec. 1009; Marrinan v. Knight (Okla.), 54 Pac., 656; James v. Van Duyn, 45 Wis., 512; Bogert v. Phelps, 14 Wis., 95; Shinn on Replevin, Secs. 535, 537.) Otherwise the officer is not in a position to question the title of the third person from whom he takes the property. The point has more frequently been decided, perhaps, in actions between a mortgagee, or an assignee of the attachment defendant, and the officer serving the attachment writ, where it has been attempted to assail the morgage or assignment for fraud or invalidity as against creditors. The officer holding under attachment only becomes entitled to question the validity or the good faith of the transaction attempted to be avoided on the ground that, through a valid writ, he represents the creditors who may have instituted a proceeding entitling them to attack the transaction. And as was said in that connection by Mr. Justice Cooley, in Mathews v. Densmore, *supra:* "But if he has no such writ, it is no concern of his whether the mortgages are valid or not. The first step in his justification is, therefore, to show not a writ merely, but a valid writ." In that case the writ was held invalid because the affidavit upon which it had been issued was insufficient under the statute.

. In the case at bar, if the plaintiff was in possession of the property under a purchase at a foreclosure sale, it cannot concern the defendants whether the sale was lawfully conducted or not, or whether in point of fact the property was covered by the mortgage under which the sale occurred, unless they have acquired some right in or lien upon the property, authorizing them to assail plaintiff's title. A mere stranger, one without any sort of claim to the property, would clearly have been unauthorized to take it away from the plaintiff, and retain it, on the ground that the plaintiff's purchase gave him no title.

It was incumbent upon the defendants, upon the theory that plaintiff's possession under claim of title, had been

invaded by the levy of the writ of attachment, to show a valid writ of attachment. And this we think they clearly failed to do. The justice's docket did not show that a separate summons had issued in the attachment suit, nor was there any evidence that one had been issued, nor did it appear that the writ of attachment contained the substance of a summons. The justice was called as a witness and asked if the writ contained the substance of a summons, and he answered that he did not know. No other attempt was made to show that it did.

The proceedings before the justice, as shown by the papers and docket entries, were as follows: July 13, 1903, plaintiff therein filed a petition, affidavit for attachment, and an undertaking. A writ of attachment was issued July 14, 1903, returnable July 17, 1903, at four o'clock p. m., returned and filed July 15, 1903. At four o'clock July 17, 1903, the attorney for plaintiff appeared and entered a motion for an order for service by publication, upon the ground that defendants were without the state, and personal service could not be had; the motion was granted and the case again set for hearing August 10, 1903, at ten o'clock a. m. On August 10, 1903, at ten o'clock a. m., affidavit of service by publication was presented and filed, found to be legal and in due form; and at eleven o'clock, one full hour after the time set for hearing, defendants failed to appear and were declared to be in default. Plaintiff introduced his evidence, and judgment was rendered in favor of plaintiff for the full amount of his claim and costs, and it was ordered "that the attached goods and chattels be sold to satisfy the judgment."

There is a docket entry to the effect that on September 4, 1903, an execution was issued and delivered to William Arnold, deputy sheriff. It does not appear by the docket that the execution had been returned, nor what had been done under it, though the justice testified that it had not been returned.

Civil actions before justices of the peace are required to be commenced by summons, or by the appearance of the

parties without summons. (R. S. 1899, Sec. 4331.) The summons is required to contain, among other things, a description of plaintiff's cause of action in such general terms as to apprise the defendant of the nature of the claim against him; and the statute provides that there shall be endorsed on the summons the amount for which plaintiff will take judgment, if the defendant fail to appear. A judgment cannot be entered for a larger amount and costs than is claimed. (R. S. Sec. 4333.) The summons must be returnable not more than twelve days from its date, and served not less than three days before the time of appearance. (Id., Sec. 4334.)

Upon certain grounds specified in the statute the plaintiff by following the prescribed procedure may have a writ of attachment in a civil action before a justice of the peace, at the time or after the commencement thereof. (Id., Sec. 4452.) If the writ of attachment is issued at the commencement of the suit, it is required to contain the substance of a summons, and no separate summons is necessary. If issued after the summons, the writ must be made returnable at the same time as the summons. (Id., Sec. 4478.) When the defendant cannot be summoned, and his property or effects shall be attached, if he do not appear, the justice is required to enter an order in his docket, requiring the plaintiff to give notice to the defendant by publication in a newspaper or by posting, as set forth in the statute. (Id., Sec. 4481.)

The section of the Revised Statutes last above cited contains a misprint of one provision as originally enacted, which error is found in every compilation and revision, since the act was originally passed. In the revision it reads, "if he do not appear to the action of the return writ," referring to the want of appearance on the part of defendant. It originally read, and no doubt is to be so understood, "if he do not appear to the action at the return of the writ." (Laws 1871, p. 58, Sec. 154.)

A writ of attachment is thus authorized to be issued by a justice of the peace only at or after the commencement of a

civil action, which is required to be commenced by a summons. Does it appear by the showing made that such an action had been commenced when the writ in question was issued? There was no separate summons issued, and none at all, unless the substance of a summons was contained in the writ, and that is not shown. Although the petition and affidavit and bond for attachment were filed July 13, 1903, nothing seems to have been done on that day by the justice, and unquestionably the intention was to issue the writ at the commencement of the action. There is clearly nothing here to show the commencement of an action prior to issuing the writ.

The statute expressly requires the writ to contain the substance of a summons when issued at the commencement of the action. That is a jurisdictional requirement. Where a summons has not already been issued in the case, the justice has no authority to issue a writ of attachment unless the writ itself shall contain the substance of a summons. Otherwise no action would be commenced, and an attachment is not authorized except at or after the commencement of an action.

It is argued that, as the defendants were out of the state, and personal service of summons was, therefore, impossible, the issuance of a summons would have been useless, and that a summons is not necessary when service is to be obtained by publication or by posting notices, as required by Section 4481, Revised Statutes. It might be a sufficient answer to say that the statute expressly requires that a summons be issued either separately or embraced in the writ to constitute the commencement of action, and that without an action previously commenced, or concurrently with the issuance of the writ of attachment, no jurisdiction exists for its issuance.

But the statute will not bear the construction contended for. It is only after property of a defendant has been attached, and his failure to appear at the return of the writ, the writ referred to being the summons or the attachment

writ containing a summons, that an order for publication may be made. There must then have been a writ of attachment, issued, otherwise the defendant's property could not have been attached; and an action must have been commenced, to authorize the issuance of an attachment writ. There is no provision in the justice's code, similar to that of the civil code governing the practice in the District Court, for an affidavit showing the necessity and statutory grounds for constructive service.

The statute provides: "When a defendant cannot be summoned, and his property or effects shall be attached, if he does not appear," etc., "the justice shall enter an order in his docket" for notice to be given as therein specified. How is it to be determined that the defendant cannot be summoned? Clearly, we think, by the officer's return upon the summons or writ, as the case may be, since no other source of information is provided for. The publication thereafter and proof thereof operates to give the justice jurisdiction, but it does not in all respects take the place of a summons. The suit is not authorized to be commenced by the publication, nor by the order therefor, but by a summons. The evidence in the case, therefore, was insufficient to show a valid writ of attachment.

The judgment will be reversed and the cause remanded for a new trial.                    *Reversed and remanded.*

BEARD, J., concurs.

VAN ORSDEL, J., did not sit.